UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BAO Properties, LLC et al.,

    Plaintiffs,

  v.

William Balsinger, et al.

    Defendants.

Case No. 1:05cv162

Judge Michael R. Barrett

**OPINION AND ORDER**

This matter came before the Court upon the filing of Defendants Balsinger and Fox's Motion for Summary Judgment (Doc. 20) and Defendant Daniel's Motion for Summary Judgment (Doc. 26)[1]. Plaintiffs filed a memorandum in opposition to both motions (Doc. 32). Defendants Balsinger and Fox filed a reply brief (Doc. 41) and an affidavit of Balsinger in support of the motion (Doc. 42). Defendant Daniel also filed a reply brief (Doc. 43).

Also pending before this Court is Defendant Daniel's Motion to Strike Affidavits filed in Support of Plaintiffs' memorandum in opposition to summary judgment (Doc. 44). Plaintiffs filed a memorandum in opposition (Doc.48) to which Defendant Daniel replied (Doc. 49). These matters are now ripe for review.

---

[1]This motion was also originally brought on behalf of Ben Krammer and Dwight Walter; however, Plaintiffs have voluntarily dismissed their claim against Krammer and Walter.

**A.    RELEVANT FACTS**

Plaintiffs are Brett Oakley ("Oakley") and his two limited liability companies, BAO Properties, LLC and BAO Productions, LLC.  Plaintiffs originally brought suit against William Balsinger ("Balsinger") in his official capacity as Building and Zoning Administrator for Butler County, Ohio; James Fox ("Fox") in his official capacity as Zoning Inspector for the Butler County Department of Development; Alan Daniel ("Daniel") in his official capacities as a member of the Butler County Zoning Board and Madison Township Trustee; Ben Krammer in his official capacity as Madison Township Trustee; and Dwight Walter in his official capacity as Madison Township Trustee pursuant to 42 U.S.C. §1983 alleging discrimination by selective enforcement of certain zoning regulations and building codes in violation of their right to equal protection under the law (Doc. 1).  Subsequently, Plaintiffs voluntarily dismissed Ben Krammer and Dwight Walter from this litigation. (Doc. 36)

    1.    Meyer Road Property

In September of 1998 Plaintiffs began operating an outdoor Halloween style entertainment attraction called the "Middletown Haunted Trail" (Oakley Depo. p24) located at 7747 Meyer Road, Madison Township, Middletown, Ohio.  This property was zoned agricultural A-1 (Fox Depo. p9).  On October 26, 2000 Fox sent Oakley a cease and desist letter stating that the Haunted Trail was not in compliance with the zoning code (Id. p11).  This noncompliance issued was raised when a complaint about the Haunted Trail was made (Oakley Depo. p49).  Oakley then applied for a conditional use permit and was permitted to continue operations of its facilities while the permit application was pending (Id. p53).  The issuance of this conditional use permit was

opposed by numerous members of the general public who were concerned about traffic, parking and noise (Id. p54). Eventually, the Board of Zoning Appeals approved the conditional use permit with conditions, one of those conditions being that Oakley had to appear before the board annually so that the concerns of the residents would continue to be addressed (Id. and Fox Depo. p18). This conditional use permit was then approved in each subsequent year through 2004 (Fox Depo. p28).

In 2003, Oakley added a new attraction called the "Temple of Terror" which was an indoor Halloween-style maze. In October, 2003 Fox contacted Oakley regarding a complaint that had been made as to the safety of the maze. Oakley was told that he would have to have a fire sprinkler installed by the 2004 season and that a fire truck would have to be on the property during hours of operation through the end of the 2003 season as well as smoke detectors (Fox Depo. p59, Oakley Depo. p26-27).

      2.     Thomas Road Property

In early 2004 Oakley purchased property located at 8762 Thomas Road, Madison Township, Middletown, Ohio which was zoned A-1 (Oakley Depo. p65). Oakley relocated both the Haunted Trail and Temple of Terror to this new property. Oakley began construction on the property in March of 2004 without obtaining a building permit (Fox Depo. p50). Fox informed Oakley that a building permit is required (Id.). Oakley applied for and obtained the required building permit (Balsinger Depo. p29). Oakley was also required to install a sprinkler system (Id. p28). Oakley applied for and received a conditional use permit for the 2004 season (Id. p16). Later in 2004, he applied to the Board of County Commissioners to have the property rezoned in order to avoid the requirement of a conditional use permit in the future (Oakley Depo. p 32, 77-

78).  This application was ultimately approved in late 2004 or early 2005 (Id. at p84-85).

        3.        Chrisman Property

In July, 2004 Oakley applied for a building permit for construction that was being done on additional property owned by him at 6865 Chrisman Lane, Madison Township, Middletown, Ohio (Fox Depo. p43, Oakley Depo. p7).  Balsinger informed Oakley that the Ohio Building Code required that a restroom be built in the new building (Balsinger Depo. p29).  Oakley contends that the building code does not require a restroom if one is available within 500 feet.  Balsinger used his discretion to require a restroom because the new building could be divided and sold separately from the building that had the restroom located in it (Balsinger Depo. p32, Oakley Depo. p103).  Oakley did not appeal this decision but instead installed the restroom (Oakley Depo. p102).

        4.        Allegations

Oakley ran for Township Trustee against Daniel in the November, 2003 general election (Oakley Depo. p10) and lost by a mere two hundred votes (Doc. 1, ¶21).  Oakley alleges that the zoning and building codes were all selectively enforced against him due to Daniel's dislike for Oakley and due to Oakley expressing his political expression and affiliation by running for election in 2003.  Oakley alleges that Daniel used his alleged political influences as a Township Trustee and Member of the Board of Zoning Appeals to influence Fox and Balsinger to hold Oakley to higher standards than other businesses (Oakley Depo. p37).  Oakley further argues that Haunted Mills, a competitor of Oakley, did not have to adhere to the same stringent standards that Oakley had to adhere to (Id. p39-40, 88-89).

Oakley also alleges in his Memorandum in Opposition to Summary Judgment that changes to the Red Book, the guidelines for the Madison Township Fire Department, were made to negatively effect Oakley, who has been a volunteer fireman since he was 15 years old, save for a minor leave of absence (Oakley Depo. p12). However, this allegation was not made in the Complaint, and thus, will not be addressed by this Court.

### B. ANALYSIS

#### 1. Motion to Strike.

In support of its memorandum in opposition to Defendants' motions to dismiss, Plaintiffs filed the affidavits of Bobby Ward, Kent Hall, Mike Sallee, Henley Haddix, Dennis Beatty and Brett Oakley. Civil Rule 56(e) provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir.2004) (internal quotations omitted). The Court has reviewed the affidavits referenced above and finds that the affidavits of Ward, Hall, Sallee, Haddix and Beatty are comprised of speculation, conjecture, hearsay and non relevant facts. As such, the Court did not consider the those affidavits. As to the affidavit of Brett Oakley, a plaintiff in this matter, the Court also found several paragraphs that are based on speculation, conjecture and hearsay, specifically paragraphs 16, 17, 42, 43, 44, 48 and 49. Those specific

paragraphs were not considered by the Court. Based upon the above finding by the Court the Motion to Strike filed by Defendant Daniel is now moot.

  2.  Motions for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

The Equal Protection Clause guarantees that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005).

To prevail on a Section 1983 claim, a plaintiff must demonstrate that someone acting color of state law deprived him of a right secured by the constitution or the laws of the United States. *Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001).

However, "[t]here is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere; and prosecutors have broad discretion in deciding whom to prosecute." *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir. 1996)(*citing Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)).

An Equal Protection analysis based on a theory of selective enforcement generally is framed in terms of racial or other protected-class discrimination. Nonetheless, the Fourteenth Amendment has been interpreted by the Supreme Court to "embody the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Zerod v. City of Bay City*, 2006 U.S. Dist. LEXIS 9279, 5-7 (D. Mich. 2006) citing *Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997). In most cases a claim of selective enforcement will arise as a defense to criminal charges or, like in this case, to regulatory enforcement actions. *Futernick v. Sumpter Twp.*, 78 F.3d at 1056.

The Sixth Circuit in *Futernick* differentiated the two types of selective prosecution claims. "True 'selective prosecution' requires the plaintiff to show: (1) membership in a protected group; (2) prosecution; (3) that others in a similar situation not members of the protected group would not be prosecuted; and (4) that the prosecution was initiated with discriminatory intent." *Futernick v. Sumpter Twp.*, 78 F.3d at 1056, FN7 *citing United States v. Anderson*, 923 F.2d 450, 453. The Sixth Circuit then stated that "'Vindictive prosec[u]tion' is prosecution to deter or punish the exercise of a constitutionally

7

protected right. The plaintiff must show: (1) exercise of a protected right; (2) the [official's] "stake" in the exercise of that right; (3) the unreasonableness of the [official's] conduct; and, presumably, (4) that the prosecution was initiated with the intent to punish the plaintiff for exercise of the protected right." *Id.* Furthermore, "there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Gardenhire v. Schubert,* 205 F.3d 303, 319 (6th Cir. 2000) citing *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997).

Plaintiffs have failed to allege that Oakley or his LLCs fall within a protected group. What Plaintiffs do allege is that Oakley and/or his LLCs were singled out due to Oakley's exercise of his constitutional rights to political expression and affiliation, i.e., his run for Township Trustee. Thus, this Court must view this case as one of "vindictive prosecution" as opposed to "true selective prosecution".

The Court must next evaluate the four prongs set forth in *Futernick.* First, it is undisputed that Oakley ran against Daniel for Township Trustee in November of 2003 which is the exercise of a protected right. Second, Plaintiffs have not shown any evidence that would support that Defendant Fox and Balsinger had a "stake" in Oakley's run for Township Trustee. Both Defendant Fox and Balsinger are employees of Butler County, Ohio and are not under the direction or control of the Township Trustees. Whether Oakley won the election or Daniel won, it would have no bearing on the Fox or Balsinger. However, Defendant Daniel did have a "stake" in the election as he was Oakley's opponent.

As to the third prong, the Plaintiffs have failed to put forth sufficient evidence of any conduct on behalf of Daniel that would be deemed unreasonable. It was Fox and Balsinger who enforced the building codes and zoning regulations, not Daniel. And Plaintiffs have not show any evidence, other than mere speculation, that Daniel asked or instructed Fox or Balsinger to single out Plaintiffs. Furthermore, it is undisputed that Daniel recused himself every time Oakley made an application to the Board of Zoning Appeals (Daniel Depo. p30, Oakley Depo. p31) and the Township Trustees do not have any involvement with enforcing zoning regulations and building codes (Daniel Depo. p28-29). In addition, even if Fox and Balsinger did have a stake in Oakley's exercise of a protected right, neither Fox or Balsinger acted unreasonable. For example, in October of 2000 a complaint was made to the County about the Haunted Trail. It was only after this complaint was made that Oakley was required to obtain a conditional use permit. In addition is was not unreasonable for the Board of Zoning Appeals to require an annual review in light of all the complaints that were made at the hearing on the conditional use permit. In October of 2003 another complaint was made to the County about the safety of the Temple of Terror. It was this complaint that led to the County to examine the safety of the structure and require sprinklers for the next season. As to the Thomas Road property, Oakley was performing work that required a permit. It is not unreasonable that Oakley be required to obtain the necessary permits nor is it unreasonable to require certain safety devices, such as the sprinklers, based upon the number of the patrons that visit Plaintiff's Halloween establishment each evening that its open. Finally, as to the Chrisman property, Balsinger had the authority to require a bathroom in the new building and his doing so it not unreasonable given that the new

building is separate and apart from the building that housed the already available restroom and that the new building could be sold separately from the old building.

In further support that the Defendants' actions were not unreasonable, there is no evidence that the Plaintiffs were treated differently than other similarly situated property owners. To be considered similarly situated, an individual must be directly comparable in all material respects. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). Oakley's Affidavit, upon which the Plaintiffs rely, neither specifically states nor depicts how the companies that Oakley asserts were treated more favorable are similarly situated to Plaintiffs. The affidavits only speculate that others were treated more favorable. In fact, the only business that was arguably similarly situated was the Haunted Mill. The Haunted Mill was also instructed to have operational sprinklers when a complaint was made as to its safety. Instead of installing the sprinklers, the Haunted Mill ceased its operations. As to the conditional use permits, the Haunted Mills was not required to obtain a conditional use permit because it was properly zoned for its operations. There is another Halloween attraction in the area believed to be named the Haunted School; however, it is an outdoor facility which does not require sprinklers and is also properly zoned for its operations.

Finally, there is no evidence that Fox, Balsinger or Daniel had any intent to punish Oakley for running for Township Trustee. Based upon the foregoing, Plaintiffs have failed to establish a claim for selective enforcement.

### C. Conclusion

Based on the foregoing, Defendants' Motions for Summary Judgment is GRANTED; Defendant Daniel's Motion to Strike is MOOT; this matter is DISMISSED.

The Clerk is **ORDERED** to enter judgment accordingly and to terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Cincinnati.

      **IT IS SO ORDERED.**

                                                 *s/Michael R. Barrett*
                                                 Michael R. Barrett, Judge
                                                 United States District Court